UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-CV-22758-UU

THOMAS GERARD MARENGO, ET AL. and all
others similarly situated under,

        Plaintiff,

vs.

DOORMAN'S PRIVATE RIDE SERVICE, INC.
D/B/A EXECUTIVE LIMOUSINE, INC.,
EXECUTIVE LIMOUSINE, SERVICE, INC.,
ASSOCIATED LIMOUSINE, INC.

        Defendants.

_____/

### DEFENDANTS' MOTION TO COMPEL BETTER RESPONSES TO INTERROGATORIES AND REQUEST FOR ADMISSIONS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 26(b)(1) and 37(a)(4), Defendants move this Honorable Court for an Order compelling Plaintiffs to provide better responses to written discovery and to further award attorney's fees and costs associated with the filing of this Motion to Compel.

Defendants served their first set of Request for Admissions (Exs. 1-3), Interrogatories (Ex. 4) and Request to Produce on October 29, 2015 to which Plaintiffs responded to on November 30, 2015 (Responses to Request for Admissions – Exs. 5-7, Responses to Interrogatories Exs. 9-10).[1] Other than several pages of documents, no documents were

---

[1] Each Plaintiff gave virtually the identical responses to both interrogatories and requests for admissions. The only differences between the respective responses are that each Plaintiff adjusted his hourly rate in arriving at approximation of damages, provided different employment starts dates and identified some different witnesses (i.e. names of companies that changed oil in their respective cars). Although the request for admissions were technically responded to (where mostly every admission was DENIED, the Request for Admissions are being attached as Interrogatory # 1 directed to each Plaintiff requests that each Plaintiff explain the basis why the request for admission was DENIED. The respective request for admission has attached to it a Rule 1006 data compilation of clock in and clock out times which Defendants maintain are the

produced at the time. On December 5, 2015, Defendants received from Plaintiffs (Marengo and Murray) roughly 7,000 pages (consisting of payroll ledgers/reconciliations and expense receipts) of documents and Defendants finally received documents responsive to Plaintiff Varela's request to produce December 29, 2015. After reviewing all discovery responses including the thousands of pages of documents produced by Plaintiffs, it became evident that Plaintiffs raised multiple baseless objections and accordingly withheld discoverable information. Defendants request that Plaintiffs' objections be overruled, and request entry of an Order compelling responses to interrogatories and requests for admissions.[2]

Pursuant to Local Rule 7.1(a)(3), Defendants' counsel hereby certifies that Plaintiffs' and Defendants' counsel conferred on December 28, 2015 and were able to partially resolve certain discovery disputes, but a number of disputes still remain that require this Honorable

---

hours worked by Plaintiffs.

[2]   In accordance with S.D.L.R. 26(g)(1), a motion to compel "…shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought…"  Although some of the discovery responses were received after close of business by e-mail on November 30, 2015, it was not processed until December 1, 2015. Defendants did not timely receive all discovery responses and only received Plaintiff Murray an Marengo's document production on December 5, 2015. Defendants just received on December 29, 2015 Plaintiff Varela's documents. The review of the documents in conjunction with the responses to request for admissions were necessary to determine if a motion to compel would be required. To add, Plaintiffs' counsel apparently because of scheduling issues failed to show up for the parties' December 27, 2015 Rule 7.1 discovery conferral conference. The conferral conference was rescheduled for December 28, 2015. On December 29, 2015 at close of business, Defendants wrote Plaintiff which discovery items it would supplement. In sum, the occurrence of the grounds requiring the filing of a motion to compel did not become fully known until December 29, 2015.
    Defendants are providing the Court with the above timeline of events in the event of a timeliness challenge. When inquiry was made of Plaintiffs counsel whether Plaintiffs intended to raise a timeliness challenge especially given the delays occasioned by Plaintiffs' actions, Plaintiffs as with every other effort to streamline matters in this case, simply refused respond.

Court's intervention.

## BACKGROUND

This is an action for unpaid overtime, minimum wages and unreimbursed expenses pursuant to the Fair Labor Standards Act. The Plaintiff limousine drivers allege that during their employment with Defendants that they worked 80 plus hours work weeks (i.e. comprised of wait time, on-call, and travel from one job to another) and were not paid overtime for hours worked over 40 hours in a week as required by the Fair Labor Standards Act. Plaintiffs further allege that they were not compensated for $10,000 per year in gas expenses.[3]

Defendants contend that 2 out of the 3 Plaintiffs were owed some minimal (i.e. under $500 exclusive of liquidated) overtime that Defendants unconditionally offered to pay Plaintiffs but Plaintiffs refused. Defendants further maintain that Plaintiffs took the limousines home and when they were dispatched to jobs, they were paid additional monies for wait time for arriving 15 minutes early at the job and they were paid for all time worked either based on an hourly rate and/or flat rate all of which exceeded the federal minimum wage. Plaintiffs' claim that they were not paid for wait time, travel time between jobs and/or on-call time is belied by real time records comprised of work times reported by Plaintiffs to Defendants' dispatchers who logged in the times for client billing and driver payroll purposes into a Limousine time management software. See Ex "A" appended to Exhibits Nos. 1-3 appended hereto (which is a rule 1006 summary of

---

[3] Defendants surmise that the unreimbursed expense claim goes to Plaintiffs' claim that these expenses somehow caused their pay to fall below minimum wage. Defendants neglect to mention in their complaint that they were reimbursed 4% of the gross limousine service fee charged to the client and that they used the company vehicles for personal use including non-compensable travel mileage from their homes to their jobs and then back home and/or whatever other non-work related destination the driver chose to go to.

the exported data).[4]  If Defendants are correct in their assertions that Plaintiffs were free to use their time between jobs as they deemed fit, then their entire overtime claim fails. To be sure, in Ravelo, Et Al. v. Doorman's Private Ride Service, Inc.., 0:13-cv-60256-Dimitrouleas, an identical case litigated by another set of limousine drivers, by the same Plaintiff's law firm against the same Defendant, Doorman's Private Ride Service, Inc., the Court on the issue of on-call/travel time held as follows:

> **Court finds that Plaintiffs were able to use the time when they were not on an assigned job predominately for their own benefit. Thus, the time is not compensable under the FLSA. See Birdwell v. City of Gadsden, Alabama, 970 F.2d 802, 807 (11th Cir. 1992) (restrictions placed on the on-call detectives were not severe, as "they could do anything they normally did so long as they were able to respond to a call promptly and sober"); Bright v. Houston Northwest Medical Center Survivor, Inc., 934 F.2d 671 (5th Cir. 1991) (Plaintiff's on-call time throughout all his off-duty time was not compensable nder the FLSA, even though he could not become intoxicated, was required to be reachable always by beeper, and was required to arrive at the hospital within approximately 20 minutes of being called.); Taunton v. Gen Pak, LLC, 762 F. Supp. 2d 1338 (M.D. Ala. 2010) (hours which maintenance employees spent on call away from their place of employment but were not called into work were not compensable under the FLSA because employees were free to go about their personal lives as they wished provided that they answered a page within an hour and remained ready to report to work in an hour and a half). See also Chapman v. Grable Plumbing Co., Inc., 2011 WL 3269628 (M.D. Fla. Aug. 1, 2011) (granting summary judgment for defendant on issues that the time plumber spent on-call when he was not responding to a service call is not compensable, and that the travel time to and from home to service call not compensable).**
>
> **Accordingly, Plaintiffs' on call time and/or gap time between jobs is not compensable working time for FLSA purposes as a matter of law.** [EMPHASIS ADDED]. Exhibit 11

In light of the previous ruling in Ravelo, *supra*, and given the clear time records evidencing that Plaintiffs did not work overtime (i.e. with the exception of the minimal overtime Defendants concede is owed), Defendants have attempted to secure cooperation from Plaintiffs in

---

[4]  The rule 1006 summaries evidence the driver arrival and completion times of each job, reflect an additional payment of the 15 minute early arrival time and also reflect the regular hourly rate being earned by each Plaintiff. Most importantly the summaries reflect that there were extended periods of time between jobs during which Plaintiffs were free to do whatever they deemed fit thereby negating their on call and travel between jobs claims.

streamlining the issues. Defendants' attempted to have Plaintiffs 1) acknowledge that the Rule 1006 summaries are accurate and/or that they have no basis to dispute the accuracy of same; 2) that they were free to do as they pleased and use the down time between jobs for their own benefit; and to 3) provide Defendants with a bonafide listing of all expenses it claims were no reimbursed. In response to these very straightforward inquiries, Plaintiffs gave evasive discovery answers/objections, refused to itemize expenses they claim were unreimbursed and more importantly, in a wholesale and conclusory manner made claim that they are somehow justified in giving estimates of hours worked.

Unfortunately, it is apparent that Plaintiffs intend to litigate matters for the sake litigating matters and to date, they have in bad faith denied virtually every single request for admission directed to these narrow issues and then objected to interrogatories requesting that Plaintiffs explain the basis of their denials. Plaintiffs are set to be deposed on January 18, 2016 and based on Plaintiffs' actions thus far, it is evident that Plaintiffs will give the same evasive and non-responsive answers in deposition if they are not compelled to give complete responses to written discovery.

**LEGAL STANDARD**

The scope of discovery under the Federal Rules is broad. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Hickman v. Taylor, 329 U.S. 495, 507-508, (1947). *See also* Farnsworth v. Procter and Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985)(the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"); Canal Authority v. Froehlke, 81 F.R.D. 609, 611 (M.D. Fla. 1979). Information is relevant if it is "germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence." Parsons v. General Motors

Corp., 85 F.R.D. 724 (N.D. Ga. 1981); See also Hickman, 329 U.S. at 501. Thus, under Rule 26 relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978). "Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." Id. at 352. In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Dunbar v. United States, 502 F.2d 506 (5th Cir. 1974). The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." Farnsworth v. Procter and Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) (emphasis added).

## DISPUTED ITEMS

**Interrogatory # 1** (The same interrogatory was propounded upon each Plaintiff with each Plaintiff providing the same response.)

> 1. For each request for admission (served contemporaneously herewith) denied by Plaintiff, provide a detailed explanation as to the basis for the denial, why the premise of the matter sought to be admitted is faulty/inaccurate and provide a detailed factual and/or legal explanation supporting said denial. Provide the name, addresses and phone numbers of any witnesses who will testify regarding the facts and subject matter denied in said request for admission.
>
> Objection as this question is overly voluminous, overly broad, not limited in scope, and the objections in Plaintiff's responses to Defendants' Request for Admissions are set forth in same. Notwithstanding these objections, see Response to Interrogatory No. 4 regarding Plaintiff's witnesses.

Discussion

In response to the conferral efforts, aside from refusing without explanation to supplement a number of interrogatory questions, as it specifically relates to the main contested discovery item (Interrogatory # 1), Plaintiffs wrote Defendants the following:

> **From: Rivkah Jaff <rivkah.jaff@gmail.com>**
> **Subject: Discovery Disputes - Marengo v. Doormans**
> **Date: December 29, 2015 at 4:16:41 PM EST**
> **To: Janet Valdes <jvaldes@lorenlaw.com>, James Loren <jloren@lorenlaw.com>, Karl Kelly <david.kelly38@rocketmail.com>, Mary Escobar <mescobar@gallup-law.com>**
>
> **Mr. Loren:**
>
> **We agree to provide Defendants with better answers to the following:**
> **Interrogatory No. 5;**
> **R2P Nos. 9 and No. 12;**
> **R2A Nos. 7, 13, 14, 15, and 16.**
> **We maintain our objections as to the following:**
>
> **Interrogatory Nos. 1 (question No. 1 is overly voluminous and overbroad in that it would essentially have approximately 30 sub-parts in direct violation of the Rules), 2 (Plaintiffs are disputing[5] Defendants' time records and therefore cannot provide a better Answer that would not be under Anderson [EMPHASIS ADDED], and 3 (Plaintiffs have provided the receipts and referenced same in their responses).**

Plaintiffs never objected to the purported "30 sub-parts" until the December 28, 2015 conferral attempt. To add, the objections that were interposed are spurious and/or nondescript at best. Defendants objected to Interrogatory No. 1 on the grounds that the request is "overly broad, …. not limited in time and scope..." In analogous case, this Court in Thermoset Corp. v. Bldg. Materials Corp. of Am., held as follows:

> "..[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to [a discovery request]. On the contrary, the party resisting discovery 'must show specifically how . . . each [discovery request] is not relevant or how each question is overly broad, burdensome, or oppressive." Josephs v. Harris Corp., 677 F.2d 985, 992 (3rd Cir. 1982); see also Chavez, 2011 U.S. Dist. LEXIS 37960, 2011 WL 1135005, at *2 ("Objections that state, without providing any detail that a discovery request is overly broad, unduly burdensome or not relevant . . . are meaningless. [The responding party] must explain the specific and particular

---

[5] Plaintiffs' objections are circular as they claim that they dispute Defendants' time records and at the same time refuse to explain what in particular is in dispute and why the records are inaccurate.

way in which [the] requests are overly broad, unduly burdensome or irrelevant."). Such boilerplate objections, without more, "are inadequate and tantamount to not making any objection at all." Sherwin- Williams Co. v. JB Collision Servs, Inc., Nos. 13-CV-1946-LAB (WVG) and 13-CV-1947-LAB (WVG), 2014 U.S. Dist. LEXIS 93368, 2014 WL 3388871, at *2 (S.D. Cal. July 9, 2014) (internal quotation marks and citation omitted); see also Mills v. East Gulf Coast Preparation Co., LLC, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("Objections to [discovery requests] must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); Momah v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) (The "mere recitation of the familiar litany [*8] that an interrogatory or document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice."). Accordingly, Defendants' boilerplate objections that a request is "overly broad, vague, harassing, burdensome, not limited in time and scope, and is not calculated to lead to the discovery of admissible evidence" are **overruled**. [EMPHASIS ADDED].

Thermoset Corp. v. Bldg. Materials Corp. of Am., 2014 U.S. Dist. LEXIS 161343, 6-8 (S.D. Fla. Nov. 18, 2014)

To add, Plaintiff would not even agree to limit or eliminate any of the sub-parts. It is unclear how Interrogatory No. 1 is overly broad and not limited to time or scope. A good number of the request for admissions that were DENIED and for which Defendants sought an explanation of through interrogatory No. 1, are inquiries directed to Request for Admission Nos. 1-10 (i.e. which incorporate the Rule 1006 data summaries appended to it as Ex A in each respective set of Request for Admissions). To be sure, the relevant request for admissions read as follows:

1. Admit that Plaintiff has no basis to dispute accuracy of time/pay compilation appended hereto as Exhibit "A."

   Denied.

2. Admit that the time compilation appended hereto as Exhibit "A" accurately reflects the hours worked by Plaintiff.

   Denied.

3. Admit that the time compilation appended hereto as Exhibit "A" accurately reflects the times worked by Plaintiff.

   Denied.

4. Admit that the time compilation appended hereto as Exhibit "A" accurately reflects the

8

    dates worked by Plaintiff.

    Denied.

5. Admit that the time compilation appended hereto as Exhibit "A" accurately reflects the overtime hours worked by Plaintiff.

    Denied.

6. Admit that the time/pay compilation appended hereto as Exhibit "A" accurately reflects the times reported by Plaintiff to Defendant(s).

    Objection ambiguous and vague as to what "reported" if referring to. Notwithstanding these objections, denied.

7. Admit that the time/pay compilation appended hereto as Exhibit "A" accurately reflects the actual gross amounts paid by Defendant Doorman's to Plaintiff.

    Denied as phrased

8. Admit that during the relevant time period (i.e. 3 years prior to the filing of this lawsuit), that Plaintiff reported all the hours contained in time/pay compilation appended hereto as Exhibit "A" directly to Defendant Doorman's.

    Denied.

9. Admit that time compilation appended hereto as Exhibit "A" accurately reflects Plaintiff's regular rate of pay.

10. Admit that time compilation appended hereto as Exhibit "A" accurately reflects Plaintiff's date of separation of employment.

    Denied.

Request for Admission Nos. 1-10 all pertain to the Rule 1006 data summaries appended to the Request for Admissions as Exhibit "A" and which were compiled from a raw data file extracted from Defendants' client tracking computer software. The raw data file was provided to Plaintiffs because they understandably insisted on verifying the accuracy of the Rule 1006 data summaries. According to Plaintiffs, after examining the raw data, they counted approximately 17,000 pages of information. As evidenced by the specific and narrow scope of request for admissions Nos. 1

9

to 10, all directed to Exhibit "A" (Rule 1006 data summary), these request for admission are all interrelated and there is no plausible explanation for Plaintiffs to have refused to answer interrogatory No.1. Contrary to Plaintiffs' objection, there is nothing voluminous (i.e. especially given the 1006 summary) in responding to interrogatory No. 1. Plaintiffs either do or do not have a basis for contesting the accuracy of Defendants' time records. To simply permit Plaintiffs to stonewall Defendants by refusing to admit the accuracy of computerized real-time clock in records and to continue to litigate imaginary travel and on-call times is contrary to the rules.

Similarly as it relates to Plaintiffs providing the basis for denying Request for Admissions 11, 12, 20, 21, 23, 24-34[6], as evidenced by the very specific and narrowly tailored inquiry into the issues in this case, there is simply no plausible reason as to why Plaintiffs should not be compelled to respond to Interrogatory No.1:

11. Admit that during the relevant time period (i.e. 3 years prior to the filing of this lawsuit), that Plaintiff reported all the hours worked to Defendant Doorman's.

   Denied.

12. Admit that while employed by Doorman's, it was Plaintiff's sole responsibility to maintain accurate time records of all hours worked.

   Denied.

17. Admit that Plaintiff never protested to Defendant Doorman's the accuracy of its payroll payments to Plaintiff.

   Objection, calls for a legal conclusion (goes to the issues of "willful" "intentional" "reckless). Notwithstanding these objections, <u>denied</u>; all complaints were verbal regarding the fact that Plaintiff was not paid overtime and/or minimum wages and/or reimbursement for expenses for the work that Plaintiff performed for Defendants. This was willful on Defendants' part and reckless.

18. Admit that if Plaintiff ever protested to Defendant Doorman's the accuracy of its

---

[6] Plaintiffs agreed to supplement Request for Admissions Nos. 13-16.

10

payroll payments, that said Defendant always paid any all monies due and owing.

Objection, calls for a legal conclusion (goes to the issues of "willful" "intentional" "reckless). Notwithstanding these objections, <u>denied</u>; all complaints were verbal regarding the fact that Plaintiff was not paid overtime and/or minimum wages and/or reimbursement for expenses for the work that Plaintiff performed for Defendants. This was willful on Defendants' part and reckless.

19. Admit that Plaintiff never complained to Defendants about not being paid overtime.

Objection, calls for a legal conclusion (goes to the issues of "willful" "intentional" "reckless). Notwithstanding these objections, denied; all complaints were verbal regarding the fact that Plaintiff was not paid overtime and/or minimum wages and/or reimbursement for expenses for the work that Plaintiff performed for Defendants. This was willful on Defendants' part and reckless.

20. Admit that Defendant Doorman's always paid Plaintiff an additional 15 minutes of pay for each engagement to compensate Plaintiff for appearing at the customer's pick up point ahead of the scheduled pick-up time.

Denied.

21. Admit that Defendant Doorman's permitted Plaintiff to take the company vehicle home.

Denied as phrased. Plaintiff was required by Defendants to take the company vehicle home so that Plaintiff was available for on-calls jobs 24/7.

23. Admit that Defendant EXECUTIVE LIMOUSINE SERVICE, INC. never employed Plaintiff.

Objection, calls for a legal conclusion ("joint employer"). Notwithstanding these , denied.

24. Admit that Plaintiff was never paid by Defendant EXECUTIVE LIMOUSINE SERVICE, INC.

Denied.

25. Admit that while employed by Defendant Doorman's, Plaintiff routinely picked up and dropped off interstate passengers at the various airports in both Miami-Dade and/or Broward Counties.

Objection, calls for a legal conclusion (motor carrier act exemption). Notwithstanding these objections, denied.

26. Admit that while employed by Doorman's, Plaintiff was were able to use his time freely predominantly for his benefit when not on an assigned job.

    Denied.

27. Admit that while employed by Doorman's, Defendant did not prevent Plaintiff from conducting personal errands between scheduled client pick-ups.

    Objection ambiguous and vague as to what "personal errands" refers to. Notwithstanding these objections, denied.

28. Admit that while employed by Doorman's, Plaintiff was free to accept or reject a job.

    Denied.

29. Admit that while employed by Doorman's, Plaintiff did in fact turn down jobs offered by Doorman's.

    Denied.

30. Admit that Plaintiff's claim for unpaid on call time and/or gap time between jobs is not compensable working under FLSA.

    Objection calls for a legal conclusions ("compensable working under FLSA"). Notwithstanding these objections, denied.

31. Admit that Plaintiff was paid at least federal minimum wage for all hours worked for Defendant Doorman's.

    Denied.

32. Admit that Plaintiff's claim of unreimbursed gas expenses is relevant only if the gross pay amount received by Plaintiff fell below minimum wage.

    Objection, calls for a legal conclusions. Notwithstanding these objections, denied.

33. Admit that even when considering factoring any unreimbursed gas expenses, Plaintiff's regular rate of pay never fell below federal minimum wage.

    Objection, calls for a legal conclusions. Notwithstanding these objections, denied.

34. Admit that Plaintiff never remitted to Defendant Doorman's any requests for reimbursement of expenses.

    Objection, this request is vague and ambiguous ("remit"). Notwithstanding these objections, denied as phrased.

**Interrogatory No. 2** (The same interrogatory was propounded upon each Plaintiff with each Plaintiff providing the same response.)

> 2. Provide an itemization of all damages claimed by Plaintiff and method of calculation for same.
>
> Defendants failed to maintain time records and did not require me to maintain the hours and dates that I worked for Defendants. As such, the information provided in this Response is an approximation under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (U.S. 1946). The below calculations do not include Plaintiff's claim for reimbursement of expenses, which Plaintiff seeks. Plaintiff seeks all fees and costs under the FLSA. Plaintiff reserves the right to seek time and one-half damages for any other completely unpaid overtime hours should the facts adduced in discovery justify same. Plaintiff also seeks liquidated damages and any other relief that the Court finds reasonable under the circumstances. Plaintiff also seeks all minimum wages and fuel charges still owing from Plaintiff's entire employment period with Defendants or as much is allowed by the FLSA, whichever is greater.

Discussion:

Despite Plaintiffs' assertion to the contrary, as evidenced by Exhibit "A" appended to the various Plaintiffs' Request for Admissions, Defendants did in fact maintain painfully accurate time records. The crux of this motion to compel is Plaintiffs' unjustified refusal to admit the accuracy of those records and/or in the alternative, their refusal to explain in Interrogatory No. 1 as to why such records are even remotely inaccurate. Plaintiffs' objections to Interrogatory No. 2 is premised upon Defendants' alleged failure to maintain records. Clearly the records were maintained and Defendant's corporate representative, Bill Kent testified at deposition that Plaintiffs would be dispatched by cell phone and the dispatch times along with driver arrival, passenger pick up and drop of times were all recorded as the drivers would call in this information to the dispatcher. Plaintiffs should not be permitted to argue Anderson as a basis for providing estimated times worked when in fact accurate records exist thereby obviating the need and/or right for guesswork. See Anderson v. Mt. Clemens, 328 US 680 (1946). As such, Plaintiffs should be compelled to respond to provide better responses to interrogatory No, 2.

**Interrogatory No. 3** (The same interrogatory was propounded upon each Plaintiff with each Plaintiff providing the same response.)

> 3. Provide an itemization of all unreimbursed gas and/or any other expenses claimed by Plaintiff in his complaint.
>
> Between the period of on or about September 1998 through on or about July 24, 2015, during the high season, which was approximately 8 months of each year, as a limo driver I was required to pay an average of $10,000 per year for gas to be used in conjunction with the transportation of Defendants' clients and while driving the Defendants' vehicles. Defendants did not properly reimburse me for these fuel expenses and remain owing these "costs" to me based on an average of $10,000 per year for each and every week that I worked for the Defendants as specified above.
>
> Available for inspection and copying at an agreed upon date and time at Plaintiff's Counsel's Firm are copies of receipts. Plaintiff did not maintain every receipt for the duration of his employment with Defendants and, as such, there are receipts and expenses that are not reflected in said receipts available for copying.

Discussion:

Each Plaintiff makes a bold assertion that he paid $10,000 in gas per year for which he did not receive reimbursement. Plaintiffs do not explain how it is that the 4% of the gross fare price paid in addition to their pay was inadequate to compensate them for gas or much the less, how any of this even caused their pay to fall below minimum wage. The issue of reimbursement of expenses only becomes relevant if it causes Plaintiffs' pay to fall below minimum wage. As evidence by the Rule 1006 summaries, even assuming that Plaintiffs were not reimbursed for $10,000 of gas over period of 8 months, their regular rate of pay still does not fall below minimum (see Ex. A appended to each Request for Admission). Defendants should not be required to guess the basis of Plaintiffs expense claim. It is also unclear what prevented Plaintiffs from maintaining accurate gas receipts especially when such expenses if not reimbursed by the employer, would have otherwise been tax deductible. Either way, Plaintiffs should be compelled to provide better responses to Interrogatory # 3.

**Request for Admission No. 22**

> Admit that Plaintiff utilized the company vehicle to conduct personal business unrelated to Defendant Doorman's business operations.
>
> Objections, ambiguous and vague as to what "personal business unrelated to" Defendants business operations.

**Discussion**: The request for admission is quite clear and Plaintiffs response is deliberately unresponsive. It is unclear why Plaintiffs are confused about the distinction between personal and business use. Plaintiffs should be compelled to respond to Request for Admission # 22.

### CONCLUSION

In light of the foregoing, Defendants' Motion to Compel Better Responses to Interrogatories and Requests for Admissions should be GRANTED. Defendants also seek an award of attorney's fees in accordance with Fed. R. Civ. P. 37(a)(4) and further request such other relief as is deemed just and proper pursuant to the Court's inherent authority.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on January 1, 2016 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

                                                            Loren Law Group
                                                            100 S. Pine Island Road - Suite 132
                                                            Plantation, FL 33324
                                                            Phone:       (954)585-4878
                                                           Facsimile:   (954)585-4886
                                                           E-Mail:      JLoren@Lorenlaw.com

                                                           */s/ James M. Loren*

                                                           _____
                                                           James M. Loren, Esquire
                                                           Bar No.: 55409

**SERVICE LIST**

JH Zidell, Esquire,
City National Bank Building
300 71 St  - Suite 605
Miami Beach, FL 33141.
CM/ECF:   zabogado@aol.com
Counsel for Plaintiffs

16