UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  15-CV-22758-OTAZO-REYES

THOMAS GERARD MARENGO, ET AL. and all
others similarly situated under,

        Plaintiff,

vs.

DOORMAN'S PRIVATE RIDE SERVICE, INC.
D/B/A EXECUTIVE LIMOUSINE, INC.,
EXECUTIVE LIMOUSINE, SERVICE, INC.,
ASSOCIATED LIMOUSINE, INC.

        Defendants.
_____/

## DEFENDANTS' MOTION TO COMPEL BETTER RESPONSES TO DISCOVERY AND COURT ORDER AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 26(b)(1) and 37(a)(4), Defendants move this Honorable Court for an Order compelling Plaintiffs to provide better responses to written discovery and to comply with court order [D.E. 56] and to further award attorney's fees and costs associated with the filing of this Motion to Compel.

## BACKGROUND

This is an action for unpaid overtime, minimum wages and unreimbursed expenses pursuant to the Fair Labor Standards Act. The Plaintiff limousine drivers allege that during their employment with Defendants that they worked 80 plus hours work weeks (i.e. comprised of wait time, on-call, and travel from one job to another) and were not paid overtime for hours worked over 40 hours in a week as required by the Fair Labor Standards Act.  Plaintiffs further allege that they were not compensated for $10,000 per year in gas expenses.[1]

Defendants contend that 2 out of the 3 Plaintiffs were owed some minimal (i.e. under

---

[1] Defendants unreimbursed expense claim goes to Plaintiffs' claim that these expenses somehow caused their pay to fall below minimum wage.

$500 exclusive of liquidated) overtime that Defendants unconditionally offered to pay Plaintiffs but Plaintiffs refused. Defendants further maintain that Plaintiffs took the limousines home and when they were dispatched to jobs, they were paid additional monies for wait time for arriving 15 minutes early at the job and they were paid for all time worked either based on an hourly rate and/or flat rate all of which exceeded the federal minimum wage. Plaintiffs' claim that they were not paid for wait time, travel time between jobs and/or on-call time is belied by real time records comprised of work times reported by Plaintiffs to Defendants' dispatchers who logged in the times for client billing and driver payroll purposes into a Limousine time management software. See Ex "A" appended to Exhibits Nos. 1-3 appended hereto (which is a rule 1006 summary of the exported data).[2] If Defendants are correct in their assertions that Plaintiffs were free to use their time between jobs as they deemed fit, then their entire overtime claim fails. To be sure, in Ravelo, Et Al. v. Doorman's Private Ride Service, Inc.., 0:13-cv-60256-Dimitrouleas, an identical case litigated by another set of limousine drivers, by the same Plaintiffs 'law firm against the same Defendant, Doorman's Private Ride Service, Inc., the Court on the issue of on-call/travel, entered summary judgment dismissing out the on-call/travel time finding that **"…Plaintiffs' on call time and/or gap time between jobs is not compensable working time for FLSA purposes as a matter of law…"** See Exhibit 14.

In light of the previous ruling in Ravelo, *supra*, and given the clear time records evidencing that Plaintiffs did not work overtime (i.e. with the exception of the minimal overtime Defendants concede is owed), Defendants have attempted to secure cooperation from Plaintiffs in streamlining the issues. Defendants' attempted to have Plaintiffs 1) acknowledge that the Rule

---

[2] The rule 1006 summaries evidence the driver arrival and completion times of each job, reflect an additional payment of the 15 minute early arrival time and also reflect the regular hourly rate being earned by each Plaintiff. Most importantly the summaries reflect that there were extended periods of time between jobs during which

1006 summaries are accurate and/or that they have no basis to dispute the accuracy of same; 2) that they were free to do as they pleased and use the down time between jobs for their own benefit; and to 3) provide Defendants with a bonafide listing of all expenses it claims were not reimbursed. In response to these very straightforward inquiries, Plaintiffs gave and continue to give evasive discovery answers/objections, refuse to itemize expenses they claim were unreimbursed and more importantly, in a wholesale and conclusory manner continue to make claim that they are somehow justified in giving estimates of hours worked.

On January 14, 2016, a hearing was held on Defendants' Motion to Compel Discovery and during this hearing, the focus of the hearing was to compel Plaintiffs to concede that the Rule 1006 summaries appended to the Request for Admission (Ex Nos 1-3) were accurate and that Plaintiffs had no basis to dispute the accuracy of same. Further argument was had as to the issue of what amount of reimbursed expenses Plaintiffs are seeking. Consistent with the above, the Court directed Plaintiffs to do the following [D.E. 56]:

> (2) Plaintiffs shall immediately issue a subpoena for the deposition of Joe Nagy ("Mr. Nagy"). Plaintiffs shall have **14 days** after Mr. Nagy's deposition to either acknowledge the accuracy of Exhibit A to Defendants' Request for Admission or give a reason why it is not accurate.
>
> (3) Defendants shall share the scanned receipts produced by Plaintiffs, and Plaintiffs shall mark the receipts for which they claim to be entitled to reimbursement, ahead of the deposition.

On January 27, 2016, Plaintiffs deposed Mr. Nagy (i.e. the individual who maintained the raw data and compiled the Rule 1006 summaries) and appear to have been unprepared for his

---

Plaintiffs were free to do whatever they deemed fit thereby negating their on call and travel between jobs claims.

deposition. To be sure, counsel (Mr. Kelly) for Plaintiffs looked at **one** line items in one of Rule 1006 summaries, and requested that Mr. Nagy to show Plaintiffs' counsel where on the raw data file he could find the data (i.e. extracted from the Limousine Management Services software – "LMS") that corresponded to the Rule 1006 summary. As per Plaintiffs' counsel's request, Mr. Nagy stood up during the deposition and pointed out on Mr. Kelly's computer screen the portion of the raw data file ("LMS") which to the tee corresponded to the Rule 1006 data summary. No further questions were asked of Mr. Nagy about the accuracy of the "LMS" data or the corresponding 1006 Rule summaries. Furthermore, no evidenced was adduced at deposition to cast doubt as to the integrity of data file or the accuracy of the rule 1006 summaries. When Mr. Nagy was asked whether you had to be an expert to compile the raw data into a 1006 data sumary, he responded that one would have to have knowledge of Microsoft Excel (i.e. the spreadsheet program).

In response to the Court's January 14, 2016 directive [D.E. 56], the Plaintiffs yet again gave evasive responses [D.E. 65] and refused to acknowledge the accuracy of the Rule 1006 summaries claiming amongst things the following:

3. Mr. Nagy testified[1] that in order to confirm the accuracy of the Exhibits A would take months and Plaintiffs' Counsel would need the assistance of a computer programmer in order to do same.

4. In order for Plaintiffs to verify these summary charts so as to ensure all information contained in the underlying LMS raw data is accurately reflected in these summary charts, per Mr. Nagy, Plaintiffs would need to hire a computer programmer to assist with the verification process and it could take months to do same. To Order Plaintiffs to have to hire outside computer programming assistance[2] so as to verify same would be unduly burdensome and not feasible.[3]

---

[1] At this time, Plaintiffs do not have a copy of Mr. Nagy's transcript, however Plaintiffs' Counsel took copious notes of the deposition testimony as set forth herein.

[2] Plaintiffs do not have a computer programming assistant and/or tech staff as part of the J.H. Zidell, P.A., law firm.

[3] Since Defendants are attempting to use this summary, they should incur the expense of proving its accuracy.

---

> 5. The LMS raw data is manually entered into the remote third-party system and, as such, the accuracy of the information contained therein is further called into question. Plaintiffs do not stipulate to the accuracy of Exhibits A.
>
> 6. Furthermore, it is Plaintiffs' position that the LMS raw data does not account for the gap time/waiting time/on-call time to the pick-up location of a passenger/between a drop-off of a passenger and travel time to the next passenger's pick-up location/from the drop-off location of a passenger to return the vehicles, have vehicles serviced, office work associated with permits, etc., during the high season, which was approximately 8 months of each year. Plaintiffs' need under *Anderson* for an estimation of their damages is far from obviated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (U.S. 1946).
>
> WHEREFORE as set for *supra*, it would be unduly burdensome and not feasible for Plaintiffs to have to verify the accuracy of the information contained in Exhibits A and, as such, Plaintiffs' should be permitted to provide their best estimation of their damages under *Anderson*. Further, Plaintiffs do not stipulate to the accuracy of Exhibits A.

Consistent with this Court's order [D.E. 56] pertaining the issue of unreimbursed expenses and in attempt to ferret out the actual dollar amount sought by Plaintiffs and in light of their assertion that they do not possess[3] all of their expense receipts/documents, Defendants on January 27,

---

[3] See Interrogatory No. 3 (Exhibit Nos 8-10) wherein Plaintiffs give evasive answers claiming not to have all their expense receipts.

2016 propounded upon Plaintiffs a Second Request to Produce (Exhibit "13"). The pertinent request to produce reads as follows:

> 1. Any and all tax returns filed by Plaintiffs with the IRS for the years 2012 to the present.
>
> 2. Any and all accounting compilations and/or lists prepared by you evidencing any expense itemization prepared for submission to your tax prepaper.

Plaintiffs interposed a number of frivolous objections essentially arguing that Plaintiffs' finances should be "kept secret..." Exhibit "13"[4] In an effort to resolve this discovery dispute, Defendants wrote Plaintiffs as follows:

> From: James Loren <Jloren@lorenlaw.com>
> Subject: Re: SERVICE OF COURT DOCUMENTS - Marengo v. Doorman's
> Date: March 2, 2016 at 6:23:59 PM EST
> To: Rivkah Jaff <rivkah.jaff@gmail.com>
> Cc: Karl Kelly <david.kelly38@rocketmail.com>, CaseFile <CaseFile@lorenlaw.com>, Janet Valdes <Jvaldes@lorenlaw.com>
>
> Ms. Jaff:

> 3. Provide an itemization of all unreimbursed gas and/or any other expenses claimed by Plaintiff in his complaint.
>
> Between the period of on or about March 1999 through on or about July 15, 2015, during the high season, which was approximately 8 months of each year, as a limo driver I was required to pay an average of $10,000 per year for gas to be used in conjunction with the transportation of Defendants' clients and while driving the Defendants' vehicles. Defendants did not properly reimburse me for theses fuel expenses and remain owing these "costs" to me based on an average of $10,000 per year for each and every week that I worked for the Defendants as specified above.
>
> Available for inspection and copying at an agreed upon date and time at Plaintiff's Counsel's Firm are copies of receipts. Plaintiff did not maintain every receipt for the duration of his employment with Defendants and, as such, there are receipts and expenses that are not reflected in said receipts available for copying.

---

[4] Defendants did not incorporate copies of the objections into this motion as the objections span the length of one page or more. To conserve space, Defendants respectfully direct the Court to Exhibit No. 13 which contains the Document request and objection.

**Please advise whether or not we can resolve your discovery objections to defendants' second request for production without the need for a motion to compel. It is defendants' position is that objections are baseless especially given the issues in this case; namely, Plaintiffs' claim of Unreimbursed expenses and inability to quantify them.**

I look forward to your response. …

Plaintiffs have unfortunately ignored Defendants' conferral efforts.

Defendants maintain that Plaintiffs are refusing supplement discovery and/or to cooperate in discovery all in an effort to undermine the defense of this case all in an effort to prevent Defendants from moving for summary judgment as they had been previously done so in the predecessor case [See D.E. 14].

## LEGAL STANDARD

The scope of discovery under the Federal Rules is broad. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Hickman v. Taylor, 329 U.S. 495, 507-508, (1947). *See also* Farnsworth v. Procter and Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985)(the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"); Canal Authority v. Froehlke, 81 F.R.D. 609, 611 (M.D. Fla. 1979). Information is relevant if it is "germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence." Parsons v. General Motors Corp., 85 F.R.D. 724 (N.D. Ga. 1981); *See also* Hickman, 329 U.S. at 501. Thus, under Rule 26 relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978). "Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." Id. at 352. In short, information can be relevant and therefore discoverable, even if not admissible at

trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Dunbar v. United States, 502 F.2d 506 (5th Cir. 1974). The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." Farnsworth v. Procter and Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) (emphasis added).

**ARGUMENT**

I. **Failure to Provide Supplemental Responses as Previously Agreed to**.

Defendants served their first set of Request for Admissions (Exs. 1-3), Interrogatories (Ex. 4) and Request to Produce (Exhibit 12) on October 29, 2015 to which Plaintiffs responded to on November 30, 2015 (Responses to Request for Admissions – Exs. 5-7, Responses to Interrogatories Exs. 9-10 and Responses to Request to Produce – Ex. 13). On December 28, 2015, the parties conferred with each other and agreed to the resolution of certain disputed discovery items. To be sure, the Plaintiffs agreed to supplement the following items:

> From: Rivkah Jaff <rivkah.jaff@gmail.com>
> Subject: Discovery Disputes - Marengo v. Doormans
> Date: December 29, 2015 at 4:16:41 PM EST
> To: Janet Valdes <jvaldes@lorenlaw.com>, James Loren <jloren@lorenlaw.com>, Karl Kelly <david.kelly38@rocketmail.com>, Mary Escobar <mescobar@gallup-law.com>
>
> Mr. Loren:
>
> We agree to provide Defendants with better answers to the following:
> Interrogatory No. 5;
> R2P Nos. 9 and No. 12;
> R2A Nos. 7, 13, 14, 15, and 16.

Despite multiple efforts to secure supplemental responses, Plaintiffs have ignored every single effort. *See* Exhibit 15 (Appended string of E-mail Exchanges between counsel). There is

8

no good faith basis for Plaintiffs to have ignored their discovery obligations to supplement discovery items pursuant to the parties' Local Rule 7.1(a)(3) conferral conference. In light of the foregoing, Plaintiffs should be compelled to provide supplemental responses as it relates to discovery propounded upon each Plaintiff pertaining to Interrogatory No. 5, Request to Produce Nos. 9, 12 and Request for Admissions Nos. 7, 13, 14, 15 and 16.

II. **Failure to Comply with Court Order [D.E. 56]**

This entire case hinges on Plaintiffs being able to establish that they worked overtime hours by virtue of being on call and/or not being paid for compensable travel time. Plaintiffs lost the identical issue on summary judgment in Ravelo, *supra*. [D.E. 14]. In an attempt to circumvent the inevitable (i.e. the granting of summary judgment), Plaintiffs are trying to erect smoke screens by refusing to admit that Defendants' rule 1006 summaries are accurate. If the accuracy of the 1006 summaries is admitted, the Court can easily ascertain and rule on summary judgment that Plaintiffs' on call/travel time claims are spurious at best. Plaintiffs' claim that the "LMS" raw data does not account for "gap/time waiting time/on-call time to the pick up location" is logically flawed as the "LMS" data and the corresponding Rule 1006 summaries clearly show client pick-up and drop off times. Furthermore, testimony in this case establishes that Plaintiffs were paid extra to be at the job 15 minutes early and in the event that an "hourly" job was extended (i.e. because of client delays), that Plaintiffs would bill for their time and such billing was passed on to Defendants' client. Simply put, there is no reason for Defendants not to have paid Plaintiffs for additional time as such time was billable to the client.

After deposing Mr. Nagy, Defendants' payroll manager, records custodian of the raw "LMS" data and author of the Rule 1006 summaries, it became evident that Plaintiffs' refusal to acknowledge the accuracy of the data is simply in bad faith. As established via deposition

testimony, the Plaintiffs would call in all the start and end times to the Defendants' dispatchers who would religiously records such data for purposes of billing clients and payment of Plaintiff's payroll. Plaintiffs claim in the status report [D.E. 65] report that they disputing the data in part because there is manual entry involved into a third-party system (i.e. one which Mr. Nagy maintained). There is no evidence whatsoever in this case, that dispatchers would input inaccurate data and/or report anything other that was submitted by Plaintiffs themselves.

In attempt to avoid compliance with this Court's order, Plaintiffs claim that they do not have a computer programming assistant or tech staff as part of the firm and do not wish to incur the expense of reviewing the raw data. [See Fn 2 and 3]. The logical flaw to this argument is that Mr. Nagy although having some prior "database" experience, is not a computer programmer but is merely someone who is very proficient in Microsoft Excel.  Plaintiffs' argument that it is Defendants' burden to prove the accuracy of the 1006 summary is correct, but they neglect to recognize that Mr. Nagy in fact verified its accuracy and Plaintiffs were ordered by this Court to explain their reasons for .  Plaintiffs' suggestion that it would take months to verify the accuracy of the data even with the assistance of a computer programmer is misleading at best. Certainly, if one was manually comb through 17,000 pages of data line by line without some form of automation, that could certainly take a while. Mr. Nagy, with the aid of a spreadsheet program (i.e. a tool utilized by virtually every law office) was able to quickly and efficiently assemble the rule 1006 summaries. Again, when during his deposition opposing counsel randomly picked a line time from the rule 1006 summary, Mr. Nagy was quickly able to point to the location of the "LMS" raw data supporting same. Plaintiffs' counsel obviously satisfied with the accuracy of the data moved on to other questioning and pressed the issue no further. Plaintiffs are not within their right to argue in a wholesale and conclusory fashion that data is inaccurate simply because

they chose not to make an effort to properly and comprehensively review the records provided to them. Plaintiffs essentially as a basis for disavowing the accuracy of such records merely chose to argue that it would take them too much time to perform such a review.

The Court's order [D.E. 56] directs Plaintiffs to explain why the data is inaccurate. If they cannot, then they need to abandon this argument. Alternatively, Defendants request this Honorable Court enter an order finding that the Rule 1006 summaries are accurate and admissible in light of Plaintiffs' disregard of this Court's order and/or inability to proffer one single plausible reason or much the less, a shred of evidence that would cast doubt as to the accuracy of the summaries.

III. **Plaintiffs should be Required to Respond to Defendants' Second Request to Produce**

As previously addressed in Defendants' First Motion to Compel [D.E. 46], each of the Plaintiffs makes a bold and/or bald assertion that they each paid $10,000 in gas per year for which they did not receive reimbursement. Plaintiffs skirt the issue of being paid 4% of the gross fare price above and beyond their regular pay to compensate them for expenses and further fail to discuss the fact that they admit using the company vehicles for personal use. As more fully discussed above, Plaintiffs in their interrogatory answers claim that they do not have all the expense records.  As such, Defendants have requested of Plaintiffs their tax records evidencing if they wrote unreimbursed employee expenses on their tax returns. In response, Plaintiffs cite to host of inapplicable cases regarding the privacy of tax returns. Plaintiffs have placed their finances at issue arguing that they did not get compensated for their expenses. Logically, an employee who incurs unreimbursed business expenses would logically deduct such expenses his from tax return. When discovery is sought directly related to the claim or defense, information such as tax returns are discoverable. Maddow v. P&G, 107 F.3d 846, 853 (11th Cir. Ga. 1997);

<u>Dunkin' Donuts Inc. v. Mary's Donuts, Inc.</u>, 2001 U.S. Dist. LEXIS 25204 (S.D. Fla. Nov. 1, 2001); *See* <u>United States v. Certain Real Prop.</u>, 444 F. Supp. 2d 1258 (S.D. Fla. 2006); *See also*, <u>Yormak v. Yormak</u>, 2014 U.S. Dist. LEXIS 129398 (M.D. Fla. Sept. 16, 2014)(Holding that financial information is fully discoverable, if relevant to the disputed issues of the underlying action, are not excepted from discovery under this rule of relevancy, and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party).

In light of the foregoing, Plaintiffs should be compelled to Respond to Requests to Produce Nos. 1 and 2 of Defendants' Second request for Production

### CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), Defendants' counsel hereby certifies that efforts to confer were made as more fully described above. Plaintiffs have unfortunately ignored Defendants' conferral efforts

### CONCLUSION

In light of the foregoing, Defendants' Motion to Compel Better Responses to Interrogatories, Requests for Admissions, Requests for Production and Compliance with Court order should be GRANTED. Defendants also seek an award of attorney's fees in accordance with Fed. R. Civ. P. 37(a)(4)&(b)(2)A) and further request such other relief as is deemed just and proper pursuant to the Court's inherent authority.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on March 5, 2016 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.

      Loren Law Group
      100 S. Pine Island Road - Suite 132
      Plantation, FL 33324
      Phone:       (954)585-4878
      Facsimile:   (954)585-4886
      E-Mail:      JLoren@Lorenlaw.com

      */s/ James M. Loren*
      _____
      James M. Loren, Esquire
      Bar No.: 55409

**SERVICE LIST**

Rivkah Jaff, Esq.
JH Zidell, P.A.,
City National Bank Building
300 71 St  - Suite 605
Miami Beach, FL 33141.
CM/ECF:   zabogado@aol.com
Counsel for Plaintiffs