UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-22758-CIV-OTAZO-REYES

[CONSENT CASE]

THOMAS GERARD MARENGO, KEVIN ANDREW MURRAY, ARMANDO VARONA a/k/a ARMANDO VARANO, and all others similarly situated under 29 U.S.C. 216(B),

        Plaintiffs,

    vs.

DOORMAN'S PRIVATE RIDE SERVICE, INC. d/b/a EXECUTIVE LIMOUSINE, INC., EXECUTIVE LIMOUSINE SERVICE, INC., ASSOCIATED LIMOUSINE, INC.,

        Defendants.

_____

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL BETTER RESPONSES TO DISCOVERY AND COURT ORDER AND INCORPORATED MEMORANDUM OF LAW [DE66]

COME NOW the Plaintiffs, by and through the undersigned, pursuant to the Federal Rules of Civil Procedure, and Responds in Opposition to Defendants' Motion [DE66], and as grounds thereof states as follows:

1. **Defendants' Motion [DE66] fails to comply with Southern District Local Rule 26.1(h)(2).** The Motion should be denied alone because it fails to comply with the procedural rules set forth in Southern District Local Rule 26.1(h)(2). Specifically, Southern District Local Rule 26.1(h)(2), states in part, that a motion to compel:

> Shall, for each separate interrogatory, question, request for production, request for admission, subpoena request, or deposition question, state: (A) verbatim the specific item to be compelled; (B) the specific objections; (C) the grounds assigned for the objection

(if not apparent from the objection); and (D) the reasons assigned as supporting the motion as it related to that specific item. The party shall write this information in immediate succession (e.g., specific request for production, objection, grounds for the objection, reasons to support motion; next request for production, objection, grounds for the objection, reasons to support motion; and so on) to enable the Court to rule separately on each individual item in the motion.

2. **The Motion should be denied for each specific item for substantive reasons as set forth.**

3. Defendants have the burden to prove the accuracy of Defendants' 1006 summaries. Defendants' Motion [DE66] purports that Plaintiffs failed to comply with the Court's Order [DE56]. Putting aside the fact that Defendants waited in excess of almost two (2) months after the filing of Plaintiffs' Status Report [DE65] in Compliance with [DE59] to kick up a fuss about the fact that Plaintiffs will not agree to the accuracy of Defendants 1006 summaries, other than rehashing their arguments as set forth in their Motion to Compel [DE46] regarding the *Ravelo*, Defendants fail to demonstrate why Plaintiffs' Status Report [DE65] does not sufficiently articulate their reasons for not stipulating to the accuracy of Defendants' summaries/Exhibits A.[1]

4. Even Defendants acknowledge that to manually comb through in excess of 17,000 pages of raw LMS data line by line without some form of automation would take months to verify.[2] [DE66]. Plaintiffs would need to hire a computer programmer to assist with the verification process, which could take months, and to order Plaintiffs to have to hire

---

[1] Plaintiffs request that the Court take judicial notice of the fact that Plaintiffs set forth numerous reasons as to why the information contained in Exhibits A cannot be stipulated to and are able to cast plausible reasons as to why these summaries cannot be relied on.

[2] Defense Counsel unabashedly criticized Plaintiffs' Counsel's deposition skills however, as  he was present at said deposition, on cross Defense Counsel apparently admittedly added little value to this issue, which is notable since he is the one who wants to use these summaries.

outside computer programming assistance[3] so as to verify same and to accrue the costs associated with same would be unduly burdensome and not feasible.[4] Yet Defendants continue to insist that Plaintiffs should be forced to analyze Mr. Nagy's spreadsheets with outside computer programming assistance.[5] Mr. Nagy himself testified to this and noted it could take months.

5.  In addition to Plaintiffs' claims for unpaid wages, Plaintiffs have claims for reimbursement of expenses pursuant to 29 C.F.R. 531.3 (d)(1)(2). *See* Second Amended Complaint [DE14].

6.  Per the Court's Order [DE56], " Defendants shall share the scanned receipts produced by Plaintiffs, and Plaintiffs shall mark the receipts for which they claim to be entitled to reimbursement, ahead of the deposition."

---

[3] Plaintiffs do not have a computer programming assistant and/or tech staff as part of the J.H. Zidell, P.A., law firm.

[4] Since Defendants are attempting to use this summary, they should incur the expense of proving its accuracy.

[5] Defendants point to Mr. Nagy's speed with which he was able to navigate the spreadsheets to verify the information in the Exhibits A. Defendants' gloss over the fact that Mr. Nagy is intimately familiar with the LMS raw data which contributes to his ease of navigating the information contained there. Furthermore, as set forth in Plaintiffs' Status Report [DE65], the LMS raw data is manually entered into the remote third-party system and, as such, the accuracy of the information contained therein is further called into question. As such, Plaintiffs do not stipulate to the accuracy of Exhibits A. Also, it is Plaintiffs' position that the LMS raw data does not account for the gap time/waiting time/on-call time to the pick-up location of a passenger/between a drop-off of a passenger and travel time to the next passenger's pick-up location/from the drop-off location of a passenger to return the vehicles, have vehicles serviced, office work associated with permits, etc., during the high season, which was approximately 8 months of each year. Plaintiffs' need under *Anderson* for an estimation of their damages is far from obviated. *See Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-688 (U.S. 1946).

7. Plaintiffs have not yet been deposed in this matter nor has a date been agreed to and secured by the Parties. Plaintiffs intend to comply with this Order and provide same prior to their depositions.

8. Defendants' Second Request for Production requested for Plaintiffs to provide all tax returns filed with the IRS for the years 2012 through present (Request No. 1) and any and all accounting compilations and/or lists prepared by Plaintiffs evidencing any expense itemization prepared for submission to Plaintiff's tax preparers with respect to Plaintiffs' tax returns.

9. Plaintiffs' Responses to Defendants' Second Request for Production set forth several grounds for their objections including, but not limited to, the fact that the request is seeking information outside the relevant time period and is overbroad (it seeks documents through to the present and there is no need for Defendants to obtain said documents after Plaintiffs were no longer employed by Defendants), the request seeks documents that are highly sensitive and confidential and protected by Section 23 of Article I of the Florida Constitution. *See, Pendlebury v. Starbucks Coffee Co.,* 2005 WL 2105024, at *2 (S.D. Fla. Aug. 29, 2005); *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.,*, 2001 WL 34079319, at *2); *Berlinger v. Wells Fargo, N.A.*, 2014 WL 6686276, at *3 (M.D. Fla. 2014) (under Florida law, a party's personal financial information is entitled to heightened protection in litigation proceedings).

10. Plaintiffs' objections are far from "frivolous," as Defendants contend. Defendants have not raised as an affirmative defense that Plaintiffs were independent contractors and Plaintiffs have stated under oath in their interrogatory responses that they were economically dependent on Defendants' during the relevant time period.

11. This Court stated in *Bonachea Perez v. Ore Sea Food Inc.* et al, Case No.: 10-24603

[D.E. 40, page 7],

> A party should not be required to produce income tax returns absent a showing of compelling need. *Camp v. Correction Med. Serv.*, No. 2:08cv227-WKW, 2009 WL 424723 at *2 (M.D. Ala. Feb. 17, 2009) (citing *Dunkin' Donuts Inc., v. Mary's Donuts*, Inc., 2001 WL 34079319 at *2 (S.D. Fla. Nov. 1, 2001)); *see also Pendlebury v.Starbucks Coffee Co.*, No. 04-80521-CIV, 2005 WL 2105024 at *1-2 (S.D. Fla. Aug. 29, 2005) (stating that "income tax returns are highly sensitive documents that courts should be reluctant to order disclosed during discovery.").

*See also Ortiz v. Santuli Corp.,* 2009 U.S. Dist. LEXIS 7273 l (S.D. Fla. Aug. 3. 2009).

12. In Response to Defendants' Request to Production and First Set of Interrogatories directed towards each Plaintiff, Plaintiffs made their receipts of unreimbursed expenses, which were divided into each year for each Plaintiff, available for inspection and copying at an agreed upon date and time. Defendants had a courier pick up the originals, said receipts were photocopied, and Defendants scanned them in and provided courtesy copies to Plaintiffs. Defendants have failed to show a compelling need for Plaintiffs' tax returns when they have provided the best evidence they have relating to their expenses – their receipts – which is compounded by the fact that Plaintiffs would have relied on these receipts when filing their tax returns. Plaintiffs fully intend to comply with the Court's Order [DE56] and take out receipts that are not relevant to their claim for reimbursement prior to the taking of their depositions. As above-mentioned, the Parties have not yet agreed to a date for same to occur.

13. Should the Court determine that Plaintiffs' tax returns are relevant for the sole purpose articulated by Defendants in relation to Plaintiffs' claims for reimbursement of expenses, Plaintiffs respectfully request the Court permit Plaintiffs' to redact all information therein aside from that which is relevant to expenses.

14. Plaintiffs have served better responses to Defendants' Responses to Request for Production Nos. 9 and 12 and Request for Admissions Nos. 13, 14, 15, and 16, as agreed and, as such, Defendants' Motion to Compel said responses is mooted.

15. Plaintiff requests one week from the Court's Order to provide better responses to Defendants' First Set of Interrogatories No. 5 and Request for Admission No. 7 so that Plaintiffs' Counsel can have an opportunity to meet with Plaintiffs and respond accordingly. As Plaintiff has agreed to provide same and will do so within one week of the Court's Order, this issue is mooted as well.

16. Therefore, Plaintiffs respectfully request the Court deny Defendants' Motion [DE66] be denied in its entirety and sustain Plaintiffs' objections to Defendants' Second Request for Production Nos. 1 and 2, and award Plaintiffs fees and costs incurred in opposing this Motion [DE66] and all related work. Plaintiff also respectfully requests one week from the Court's Order to better respond to Defendants' First Set of Interrogatories No. 5. In the alternative, should the Court grant Defendants' Motion [DE66] that Plaintiffs be permitted to redact Plaintiffs' tax returns aside from that which is relevant to expenses.

## <u>MEMORANDUM OF LAW</u>

A party seeking discovery bears the burden of showing that the information is relevant and necessary. *Williams v. Art Inst.,* 2006 U.S. Dist. LEXIS 62585, *7, 2006 WL 36946-49 (N.D. Ga. Sept. 1, 2006). The scope of relevant discovery is broad but it is not without limits. *Washington v. Brown & Williamson Tobacco,* 959 F.2d 1566, 1570 (11th Cir. 1992). *See also, Longmire v. Ala. State Univ.,* 141 F.R.D. 414, 418 (M .D.Ala.1992) (noting that discovery requests should be carefully scrutinized when they have the potential for "harassment, embarrassment, and unnecessary invasions into [one's] private life"); *Priest v. Rotary,* 98 F.R.D.

755, 761 (N.D.Cal.1983) ("When a discovery request '[a]pproaches the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.' ") (quoting *Carlson Cos., Inc. v. Sperry & Hutchinson Co.* 374 F.Supp. 1080, 1088 (D.Minn.1974)); 10 Federal Procedure, Lawyer's Edition § 26:70 (1994 & Supp.2005) ("the district courts should not neglect their power to restrict discovery where justice requires protection for a party ... from annoyance, embarrassment, oppression, or undue burden or expense").[3]*Pendlebury v. Starbucks Coffee Co.,* No. 04-80521-CIV, 2005 WL 2105024, at *2 (S.D. Fla. Aug. 29, 2005). While the burden rests on the party resisting the discovery to show how the objected-to requests are unreasonable, irrelevant, or otherwise unduly burdensome, Federal Rule of Civil Procedure 26(c) specifically instructs the court to limit the frequency or extent of discovery if justice so requires to protect a party or witness from annoyance, embarrassment, oppression, or undue burden or expense. *Id.* at 1559; *See also* Fed. R. Civ. P. 26(c). Rule 26(b)(1) instructs the court to limit the frequency or extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or is obtainable from a more convenient or less burdensome or expensive source, (ii) the party seeking the discovery has had ample opportunity to obtain the information, or (iii) the discovery is unduly burdensome or expensive taking into account the circumstances of the particular case.

*Steven Baicker-McKee*, *Federal Civil Rules Handbook*, 411 (1998 ed.).

**The Motion Fails to Comply with Southern District Local Rule 26.1(h)(2).** The Motion should be denied alone because it fails to comply with the procedural rules set forth in Southern District Local Rule 26.1(h)(2). Specifically, Southern District Local Rule 26.1(h)(2), states in part, that a motion to compel:

> Shall, for each separate interrogatory, question, request for production, request for admission, subpoena request, or deposition question, state: (A) verbatim the specific item to be compelled; (B) the specific objections; (C) the grounds assigned for the objection (if not apparent from the objection); and (D) the reasons assigned as supporting the motion as it related to that specific item. The party shall write this information in immediate succession (e.g., specific request for production, objection, grounds for the objection, reasons to support motion; next request for production, objection, grounds for the objection, reasons to support motion; and so on) to enable the Court to rule separately on each individual item in the motion.

As such the Motion should be denied in its entirety for its failure to follow clear, straight-forward procedural guidelines. *See, e.g., Habersham Plantation Corp. v. Molyneux,* 2011 WL 1832782, at *3 (S.D. Fla. **The Motion should be denied for each specific item for substantive reasons set forth herein**.

### Supplemental Responses As Previously Agreed:

Plaintiffs have served better responses to Defendants' Responses to Request for Production Nos. 9 and 12 and Request for Admissions Nos. 13, 14, 15, and 16, as agreed and, as such, Defendants' Motion to Compel said responses is mooted. Plaintiff requests one week from the Court's Order to provide better responses to Defendants' First Set of Interrogatories No. 5 and Request for Admission No. 7 so that Plaintiffs' Counsel can have an opportunity to meet with Plaintiffs and respond accordingly. As Plaintiff has agreed to provide same and will do so within one week of the Court's Order, this issue is mooted as well.

### Plaintiffs Have Complied With The Court's Order [DE56]:

In the case at bar, Plaintiffs were ordered to issue a subpoena for the deposition of Joe Nagy and within 14 days after Nagy's deposition to either acknowledge the accuracy of Exhibit A of Defendants' Request for Admissions or give a reason why it is not accurate.  [DE56]. In

compliance with the Court's Order, on or about January 27, 2016, Joe Nagy was deposed regarding Exhibit A of Defendants' Request for Admissions directed towards each Plaintiff separately. Thereinafter, Plaintiffs filed their Status Report [DE65] in Compliance with [DE59] setting forth their reason as to why they do not stipulate to the accuracy of Exhibits A and provided their explanation to the Court as to why it would be unduly burdensome and not feasible for Plaintiffs to have to verify the accuracy of the information contained in Exhibits A and, as such, Plaintiffs' should be permitted to provide their best estimation of their damages under *Anderson.*[6] As set forth in Plaintiffs' Status Report [DE65], Mr. Nagy testified that in order to confirm the accuracy of the Exhibits A would take months and Plaintiffs' Counsel would need the assistance of a computer programmer in order to do same. In order for Plaintiffs to verify these summary charts so as to ensure all information contained in the underlying LMS raw data is accurately reflected in these summary charts, per Mr. Nagy, Plaintiffs would need to hire a computer programmer to assist with the verification process and it could take months to do same. To Order Plaintiffs to have to hire outside computer programming assistance[7] so as to verify same would be unduly burdensome and not feasible.[8] Defendants waited in excess of almost two (2) months after the filing of Plaintiffs' Status Report [DE65] in Compliance with [DE59] to kick up a fuss about the fact that Plaintiffs will not agree to the accuracy of Defendants 1006 summaries. Defendants even acknowledge that to manually comb through in excess of 17,000 pages of raw LMS data line by line without some form of automation would

---

[6] At the time of filing Plaintiffs' Status Report [DE65] Plaintiffs did not have a copy of Mr. Nagy's transcript, however Plaintiffs' Counsel took copious notes of the deposition testimony as set forth herein. Plaintiffs have not yet ordered the deposition transcript of Mr. Nagy.

[7] Plaintiffs do not have a computer programming assistant and/or tech staff as part of the J.H. Zidell, P.A., law firm.

[8] Since Defendants are attempting to use this summary, they should incur the expense of proving its accuracy.

take months to verify. [DE66]. Yet Defendants continue to insist that Plaintiffs should be forced to analyze Mr. Nagy's spreadsheets with outside computer programming assistance.[9] Mr. Nagy himself testified to this and noted it could take months.

**<u>Plaintiffs' Should Not Be Required To Provide Better Answers To Defendants' Second Request For Production Nos. 1 and 2:</u>**

Defendants' Second Request for Production requested for Plaintiffs to provide all tax returns filed with the IRS for the years 2012 through present (Request No. 1) and any and all accounting compilations and/or lists prepared by Plaintiffs evidencing any expense itemization prepared for submission to Plaintiff's tax preparers. Defendants contend this information is relevant to Plaintiffs' claims for unpaid wages, Plaintiffs have claims for reimbursement of expenses pursuant to 29 C.F.R. 531.3 (d)(1)(2). *See* Second Amended Complaint [DE14].

Defendants have failed to show a compelling need for Plaintiffs' tax returns when they have provided the best evidence they have relating to their expenses – their receipts – which is compounded by the fact that Plaintiffs would have relied on these receipts when filing their tax returns.

Plaintiffs objected on the basis that this request is harassing, irrelevant, burdensome, and overbroad in that it seeks information that is not relevant to the pending claims in this action nor

---

[9] Defendants point to Mr. Nagy's speed with which he was able to navigate the spreadsheets to verify the information in the Exhibits A. Defendants' gloss over the fact that Mr. Nagy is intimately familiar with the LMS raw data which contributes to his ease of navigating the information contained there. Furthermore, as set forth in Plaintiffs' Status Report [DE65], the LMS raw data is manually entered into the remote third-party system and, as such, the accuracy of the information contained therein is further called into question. As such, Plaintiffs do not stipulate to the accuracy of Exhibits A. Also, it is Plaintiffs' position that the LMS raw data does not account for the gap time/waiting time/on-call time to the pick-up location of a passenger/between a drop-off of a passenger and travel time to the next passenger's pick-up location/from the drop-off location of a passenger to return the vehicles, have vehicles serviced, office work associated with permits, etc., during the high season, which was approximately 8 months of each year. Plaintiffs' need under *Anderson* for an estimation of their damages is far from obviated. *See Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-688 (U.S. 1946).

reasonably calculated to lead to the discovery of admissible evidence. This Request as phrased seeks information outside the relevant time period and the scope of said request if overbroad (the Request as phrased seeks documents through to the present and Plaintiffs allege that they only worked for Defendants through to 2015). Further, specifically, the Request as phrased seeks tax information which are highly sensitive documents which courts have been reluctant to order disclosed during discovery ("[i]ncome tax returns are highly sensitive documents" which courts have been reluctant to order disclosed during discovery absent: (1) the relevance of the tax returns to the subject matter of the dispute; and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable. *See, Pendlebury v. Starbucks Coffee Co.,* 2005 WL 2105024, at *2 (S.D. Fla. Aug. 29, 2005) *see also,* Dunkin' Donuts, 2001 WL 34079319, at *2). Plaintiff objects to this request as it seeks documents that are highly confidential and proprietary. Further, documents such as W-2/1099 forms may be just as easily determined by Defendants' records in connection with this Request. Additionally, Plaintiff's private financial life is not relevant to Plaintiff's claims and is otherwise protected by Section 23 of Article I of the Florida Constitution. *See Berlinger v. Wells Fargo, N.A.*, 2014 WL 6686276, at *3 (M.D. Fla. 2014) (under Florida law, a party's personal financial information is entitled to heightened protection in litigation proceedings). In *Berlinger*, the Court stated:

> [P]ersonal finances are among those private matters kept secret by most people. *Woodward v. Berkery,* 714 So.2d 1027, 1035 (Fla. 4th DCA 1998) (citing *Winfield v. Div. of Pari–Mutuel Wagering,* 477 So.2d 544 (Fla.1985)).

It follows that the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant. *Straub v. Matte,* 805 So.2d 99, 100 (Fla. 4th DCA 2002). *Id. citing Rappaport v. Mercantile Bank,* 17 So. 3d 902, 906 (Fla. 2d DCA 2009) (quotes omitted). *See also Camp v. Corr. Med. Servs.*, 2009

U.S. Dist. LEXIS 12034, 5-6 (M.D. Ala. Feb. 17, 2009). Furthermore, this Court stated in

*Bonachea Perez v. Ore Sea Food Inc.* et al, Case No.: 10-24603 [D.E. 40, page 7]

> A party should not be required to produce income tax returns
> absent a showing of compelling need. *Camp v. Correction Med.
> Serv.*, No. 2:08cv227-WKW, 2009 WL 424723 at *2 (M.D. Ala.
> Feb. 17, 2009) (citing *Dunkin' Donuts Inc., v. Mary's Donuts*, Inc.,
> 2001 WL 34079319 at *2 (S.D. Fla. Nov. 1, 2001)); *see also
> Pendlebury v.Starbucks Coffee Co.*, No. 04-80521-CIV, 2005 WL
> 2105024 at *1-2 (S.D. Fla. Aug. 29, 2005) (stating that "income
> tax returns are highly sensitive documents that courts should be
> reluctant to order disclosed during discovery.").

    *See also Ortiz v. Santuli Corp.,* 2009 U.S. Dist. LEXIS 7273 l (S.D. Fla. Aug. 3. 2009).

Plaintiffs further object as they were paid by Defendants by check and, as such, Defendants

would have proof of Plaintiffs' remunerations. Defendants are not alleging that Plaintiffs were

independent contractors and, as Plaintiffs were economically dependent on Defendants for the

relevant time period, the requested information is irrelevant and harassing. Further, Plaintiffs

object as Plaintiffs have provided Defendants with copies of their gas receipts for the relevant

time period that Plaintiffs maintained with regards to their expenses and, as such, documents

submitted for the purpose of filing taxes would be those gas receipts already provided to

Defendants.

    As explained above, in Response to Defendants' Request to Production and First Set of

Interrogatories directed towards each Plaintiff, Plaintiffs made their receipts of unreimbursed

expenses, which were divided into each year for each Plaintiff, available for inspection and

copying at an agreed upon date and time. Defendants had a courier pick up the originals, said

receipts were photocopied, and Defendants scanned them in and provided courtesy copies to

Plaintiffs. Defendants have failed to show a compelling need for Plaintiffs' tax returns when they

have provided the best evidence they have relating to their expenses – their receipts – which

would have been relied on for the filing of Plaintiffs' tax returns. Defendants should be prohibited from embarking on a fishing expedition in the vein of utilizing this nebulous information to determine Plaintiffs expenses when in fact Plaintiffs have already provided direct evidence of said claims (i.e. their receipts). Defendants' insistence on having these documents appears to be vexatiously submitted to harass Plaintiffs.

Should the Court determine that Plaintiffs' tax returns are relevant for the sole purpose articulated by Defendants in relation to Plaintiffs' claims for reimbursement of expenses, Plaintiffs respectfully request the Court permit Plaintiffs' to redact all information therein aside from that which is relevant to expenses.

Plaintiff asserts, for the reasons stated above, that Plaintiff's responses or objections were substantially justified. Federal Rule of Civil Procedure 37(a)(5)(B) states:

> If the motion [to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.

Plaintiff respectfully requests that the Court sustain its objections, deny Defendants' Motion [DE66] in its entirety, including Defendants' request for fees and costs pursuant to the Rules, and grant Plaintiff's reasonable expenses incurred in opposing the Motion [DE66] and all related work.

WHEREFORE PLAINTIFFS RESPECTFULLY REQUEST THE COURT DENY DEFENDANTS' MOTION [DE66] IN ITS ENTIRETY AND SUSTAIN PLAINTIFFS' OBJECTIONS TO DEFENDANTS' SECOND REQUEST FOR PRODUCTION NOS. 1 AND 2, AND AWARD PLAINTIFF FEES AND COSTS INCURRED IN OPPOSING THE MOTION [DE66] AND ALL RELATED WORK. PLAINTIFF ALSO RESPECTFULLY

REQUESTS ONE WEEK FROM THE COURT'S ORDER TO BETTER RESPOND TO DEFENDANTS' FIRST SET OF INTERROGATORIES NO. 5. AND FIRST REQUEST FOR ADMISSIONS NO. 7. IN THE ALTERNATIVE, SHOULD THE COURT GRANT DEFENDANTS' MOTION [DE66] THAT PLAINTIFFS BE PERMITTED TO REDACT PLAINTIFFS' TAX RETURNS ASIDE FROM THAT WHICH IS RELEVANT TO EXPENSES.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah Jaff ___
    Rivkah Jaff, Esquire
    Florida Bar No.: 107511

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT A TRUE AND CORRECT**
**COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 3/22/16 TO:**

**JAMES M. LOREN, ESQ.**
**100 SOUTH PINE ISLAND ROAD, SUITE 132**
**PLANTATION, FLORIDA 33324**
**PH: (954) 585-4878**
**MIAMI: (305) 949-4040**
**ATLANTA: (678) 224-5702**
**FAX: (954) 585-4886**
**EMAIL : JLOREN@LORENLAW.COM**

**BY:__/s/____Rivkah Jaff _____**
**RIVKAH JAFF, ESQ.**